FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.
SEP 2 3 2010
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEAST DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | NO. 2:10-00011 |
| ) | |
| ) | 18 U.S.C. § 2 |
| v. ) | 18 U.S.C. § 1347 |
| ) | 18 U.S.C. § 1957 |
| ) | 18 U.S.C. 1028A |
| ) | 18 U.S.C. § 982 |
| ) | 21 U.S.C. § 853 |
| YENNIER CAPOTE GONZALEZ ) | |

# INDICTMENT

## COUNTS ONE THROUGH FIVE

THE GRAND JURY CHARGES:

At times material to this Indictment:

### Introduction

1. Medicare was a federally funded and administered health care program primarily for persons age 65 and older, and certain others with disabilities.

2. Medicare was a health care benefit program as defined in Title 18, United States Code, Section 24(b).

3. Medicare was divided into four parts: Part A, B, C, and D. Medicare Part A covered expenses associated with hospitals, home health services, and hospice care; Medicare Part B covered expenses for physician and non-physician services, lab tests, ambulance transports, and medical equipment; Medicare Part C related to the Medicare managed care program; and Medicare Part D covered expenses for prescription drugs.

4. The Medicare Advantage Program ("MAP") was administered as part of Medicare Part C and provided Medicare beneficiaries with the option to receive their Medicare benefits through private managed care plans ("MAP plans"), including health maintenance organizations ("HMO"), provider sponsored organizations ("PSO"), preferred provider organizations ("PPOs"), and private fee-for-service plans ("PFFS"), rather than directly from Medicare Parts A or B. To be eligible to enroll in a MAP plan, an individual was required to be entitled to receive benefits under Medicare Parts A and B.

5. Private health insurance companies, including WellPoint, Inc., ("WellPoint") and CIGNA Medicare Services ("CIGNA"), offered MAP plans to Medicare-eligible individuals. Private insurance companies offering MAP plans, as well as their related subsidiaries and affiliates, were known as "participating insurance companies" and contracted with the Center for Medicare Services ("CMS") to provide managed care to MAP beneficiaries through various MAP approved plans. As part of Medicare, MAP plans offered by participating insurance companies were health care benefit programs as defined in Title 18, United States Code, section 24(b).

6. Under the terms of MAP, a participating insurance company that received a claim for benefits, items, and/or services purportedly provided to a MAP beneficiary enrolled in one of the participating insurance company's MAP plans typically paid the claim directly to the physicians or other health care providers who had purportedly provided benefits, items and/or services to the MAP beneficiary, as opposed to paying the beneficiary him or herself.

7. To receive payment for benefits, items, and/or services rendered to a MAP beneficiary, the rendering physician or other health care provider was required to submit a claim to the

participating insurance company providing the MAP plan to the MAP beneficiary. In order to be submitted, the claim was required list certain information, including: (a) the MAP beneficiary's name and identification number; (b) a description of the health care benefit, item, and/or service provided or supplied to the beneficiary; (c) the billing code for the benefit, item, and/or service provided or supplied to the beneficiary; (d) the date upon which the benefit, item, and/or service was provided or supplied to the beneficiary; and (e) the name of the rendering physician or other health care provider, as well as a unique National Provider Identifier ("NPI") specific to the rendering physician or other health care provider.

8. When a MAP claim was submitted, the submitting party certified that: (a) the benefit, item, and/or service being billed was medically necessary; (b) the benefit, item, and/or service being billed was, in fact, provided to the MAP beneficiary as billed; and (c) that the contents of the claim were true, correct, complete, and submitted in compliance with the laws and regulations governing the Medicare program.

9. With respect to MAP claims for medication purportedly provided and administered to MAP beneficiaries, the relevant billing codes were set forth in the Healthcare Common Procedure Coding System, which was known as "HCPCS," and in the Current Procedural Terminology, which was known as "CPT."

10. Physicians and other health care providers who sought reimbursement for the provision of the medication pegademase bovine to MAP beneficiaries were required to use the HCPCS code J2504 on their claim forms submitted to participating insurance companies.

11. Physicians and other health care providers who sought reimbursement for administering injections of the medication pegademase bovine to MAP beneficiaries were

3

required to use the CPT code 96372 on their claim forms submitted to participating insurance companies.

12. Dr. P. was a physician whose NPI was used by YENNIER CAPOTE GONZALEZ to submit fraudulent claims for benefits, items, and/or services to participating insurance companies.

### The Defendant

13. YENNIER CAPOTE GONZALEZ owned and operated Gainesboro Ultimate Med Service Corporation ("Gainesboro Ultimate"), a Tennessee Corporation with a corporate charter listing its principle office as being located at 179 Buck Branch Lane, Gainesboro, Tennessee, in the Middle District of Tennessee.

14. Gainesboro Ultimate was a health care provider engaged primarily in the business of submitting claims to participating insurance companies for benefits, items, and/or services purportedly provided to MAP beneficiaries enrolled in those participating insurance companies' MAP plans.

15. Through Gainesboro Ultimate, YENNIER CAPOTE GONZALEZ regularly caused claims to be submitted to, and received payments from, participating insurance companies in connection with MAP plans offered by the participating insurance companies.

### The Scheme to Defraud

16. Beginning in or about July 2010, and continuing thereafter until in or about August 2010, in the Middle District of Tennessee and elsewhere, **YENNIER CAPOTE GONZALEZ**, alone and with others, unlawfully, knowingly, and willfully executed, and attempted to execute, a scheme and artifice to: (1) defraud health care benefit programs affecting commerce within the

meaning of 18 U.S.C. § 24(b); and (2) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, health care benefit programs affecting commerce within the meaning of 18 U.S.C. § 24(b), in connection with the delivery of, and payment for, health care benefits, items, and services, all in violation of Title 18, United States Code, Sections 1347(1) & (2) and 2, as further detailed below.

17. It was part of the scheme and artifice that YENNIER CAPOTE GONZALEZ, through Gainesboro Ultimate, caused fraudulent claims, in excess of approximately $220,000, to be submitted to participating insurance companies WellPoint and CIGNA, for providing and administering injections of pegademase bovine identified by HCPCS code J2504 and CPT code 96372 and other services that, as YENNIER CAPOTE GONZALEZ then and there knew, were never provided to the respective purported MAP beneficiaries enrolled in MAP plans offered by WellPoint and CIGNA.

18. It was further part of the scheme and artifice that, in causing such claims to be submitted to WellPoint and CIGNA for providing and administering injections of pegademase bovine identified by HCPCS code J2504 and CPT code 96372 and other benefits, items, and/or services, YENNIER CAPOTE GONZALEZ, through Gainesboro Ultimate, certified that the benefits, items, and/or services being billed were medically necessary, were, in fact, provided to the MAP beneficiaries as billed, and that the contents of the claims were true, correct, complete, and submitted in compliance with the laws and regulations governing the Medicare program. YENNIER CAPOTE GONZALEZ, through Gainesboro Ultimate, made this certification despite knowing that injections of pegademase bovine identified by HCPCS code J2504 and CPT code

5

96372 and other benefits, items, and/or services had not been provided and/or administered to MAP beneficiaries as described in the claims submitted to WellPoint and CIGNA.

Claims Submitted to Health Care Benefit Programs

19. On or about the dates set forth below with respect to each count, in the Middle District of Tennessee and elsewhere, **YENNIER CAPOTE GONZALEZ**, for the purpose of executing, and attempting to execute, the aforesaid scheme and artifice to defraud health care benefit programs and obtain the money and property of health care benefit programs, knowingly and willfully did cause fraudulent claims to be submitted to health care benefit programs, each such claim being a separate count of this Indictment as follows:

| Count | Date of Claim | Description of Claim |
|---|---|---|
| 1 | On or about 7/20/2010 | Claim for approximately $16,391.88 to UniCare, a subsidiary/affiliate of WellPoint, seeking payment for providing and administering injections of pegademase bovine, as defined by HCPCS Code J2504 and CPT code 96372, supposedly provided to beneficiary DS in July 2010 by Dr. P. |
| 2 | On or about 7/22/2010 | Claim for approximately $14,907.90 to UniCare, a subsidiary/affiliate of WellPoint, seeking payment for providing and administering injections of pegademase bovine, as defined by HCPCS Code J2504 and CPT code 96372, supposedly provided to beneficiary OM in July 2010 by Dr. P. |
| 3 | On or about 7/22/2010 | Claim for approximately $14,907.90 to CIGNA Medicare Services, a subsidiary/affiliate of CIGNA, seeking payment for providing and administering injections of pegademase bovine, as defined by HCPCS Code J2504 and CPT code 96372, supposedly provided to beneficiary RM in July 2010 by Dr. P. |
| 4 | On or about 8/5/2010 | Claim for approximately $9,938.60 to CIGNA Medicare Services, a subsidiary/affiliate of CIGNA, seeking payment for providing and administering injections of pegademase bovine, as defined by HCPCS Code J2504 and CPT code 96372, supposedly provided to beneficiary MR in July 2010 by Dr. P. |

| | | |
|---|---|---|
| 5 | On or about 8/20/2010 | Claim for approximately $14,907.90 to CIGNA Medicare Services, a subsidiary/affiliate of CIGNA, seeking payment for providing and administering injections of pegademase bovine, as defined by HCPCS Code J2504 and CPT code 96372, supposedly provided to beneficiary AP in August 2010 by Dr. P. |

In violation of Title 18, United States Code, Sections 1347(1) & (2) and 2.

## COUNT SIX

THE GRAND JURY FURTHER CHARGES:

1. The allegations contained in Paragraphs 1 through 19 of Counts One through Five are realleged and incorporated herein.

2. On or about August 21, 2010, in the Middle District of Tennessee and elsewhere, **YENNIER CAPOTE GONZALEZ**, knowingly engaged in a monetary transaction, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, a withdrawal of approximately $14,407 from a Regions Bank account number ending in 0345 and the purchase of a cashier's check in the amount of $14,400, said funds having been derived from a specified unlawful activity, that is, the health care fraud scheme identified in Counts One through Five of this Indictment.

In violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT SEVEN

THE GRAND JURY FURTHER CHARGES:

1. The allegations contained in Paragraphs 1 through 19 of Counts One through Five are realleged and incorporated herein.

7

2. On or about July 20, 2010, in the Middle District of Tennessee and elsewhere, **YENNIER CAPOTE GONZALEZ**, did knowingly use, transfer, and possess, without lawful authority, the means of identification of another person, specifically, a National Provider Identifier ("NPI"), that may be used alone or in conjunction with any other information to identify a specific individual, during and in relation to a felony violation of 18 U.S.C. § 1347. Specifically, **YENNIER CAPOTE GONZALEZ**, falsely used the NPI of Dr. P. when causing a fraudulent claim to be submitted to WellPoint as referenced in Count One.

In violation of Title 18, United States Code, Section 1028A(a)(1) & 2 and 2.

## COUNT EIGHT

THE GRAND JURY FURTHER CHARGES:

1. The allegations contained in Paragraphs 1 through 19 of Counts One through Five are realleged and incorporated herein.

2. On or about July 22, 2010, in the Middle District of Tennessee and elsewhere, **YENNIER CAPOTE GONZALEZ**, did knowingly use, transfer, and possess, without lawful authority, the means of identification of another person, specifically, a National Provider Identifier ("NPI"), that may be used alone or in conjunction with any other information to identify a specific individual, during and in relation to a felony violation of 18 U.S.C. § 1347. Specifically, **YENNIER CAPOTE GONZALEZ**, falsely used the NPI of Dr. P. when causing a fraudulent claim to be submitted to CIGNA as referenced in Count Three.

In violation of Title 18, United States Code, Section 1028A(a)(1) & 2 and 2.

## FORFEITURE ALLEGATION I

Upon conviction of the offenses alleged in Counts One through Five, **YENNIER CAPOTE GONZALEZ** shall forfeit to the United States, pursuant to 18 U.S.C. § 982 (a)(7):

    a.    Any real or personal property that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the violations set forth in Counts One through Five, including, but not limited to:

        i.    Money Judgment–A sum of money equal to the amount of proceeds obtained as a result of the fraud scheme alleged herein, for which the defendant is liable.

If, as a result of any act or omission of **YENNIER CAPOTE GONZALEZ**, any property subject to forfeiture:

    a.    Cannot be located upon the exercise of due diligence;

    b.    Has been transferred or sold to, or deposited with, a third party;

    c.    Has been placed beyond the jurisdiction of the Court;

    d.    Has been substantially diminished in value; or

    e.    Has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property and it is the intent of the United States, pursuant 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of YENNIER CAPOTE GONZALEZ up to the value of the above-referenced forfeitable property, including a money judgment in a sum of money equal to the amount of proceeds obtained as a result of the fraud scheme alleged herein, for which the

defendant is liable, which represents the proceeds of the violations set forth in Counts One through Five.

## FORFEITURE ALLEGATION II

Upon conviction of the offense alleged in Count Six, **YENNIER CAPOTE GONZALEZ** shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1):

    a.    Any property which constitutes or is derived from proceeds traceable to the violations set forth in Count Six, including, but not limited to:

        i.    Money Judgment–A sum of money equal to the amount of proceeds obtained as a result of the ~~fraud scheme~~ [money laundering] alleged herein, for which the defendant is liable;

    b.    any property involved in the commission of the violations set forth in Count Six, or any property traceable to such property.

If, as a result of any act or omission of **YENNIER CAPOTE GONZALEZ**, any property subject to forfeiture:

    a.    Cannot be located upon the exercise of due diligence;

    b.    Has been transferred or sold to, or deposited with, a third party;

    c.    Has been placed beyond the jurisdiction of the Court;

    d.    Has been substantially diminished in value; or

    e.    Has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property and it is the intent of the United States, pursuant 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1), to seek

10

forfeiture of any other property of **YENNIER CAPOTE GONZALEZ** up to the value of the above-referenced forfeitable property, including a money judgment in a sum of money equal to the amount of proceeds obtained as a result of the money laundering scheme alleged in the violation set forth in Count Six.

A TRUE BILL

_____
FOREPERSON

_____
JERRY E. MARTIN
UNITED STATES ATTORNEY

_____
MATTHEW J. EVERITT
ASSISTANT UNITED STATES ATTORNEY